IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MALVASI,<br><br>        Petitioner,<br><br>vs.<br><br>WARDEN DAVID W. GRAY,[1]<br><br>        Respondent. | CASE NO. 4:24-cv-474<br><br>DISTRICT JUDGE<br>JAMES R. KNEPP II<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**SUPPLEMENTAL REPORT &<br>RECOMMENDATION** |

Pro se Petitioner Michael Malvasi filed a three-ground Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Malvasi is in custody at the Belmont Correctional Institution due to a journal entry of sentence in the case *State v. Malvasi*, Mahoning County Court of Common Pleas, Case No. 2018 CR 584. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. I issued a briefing schedule. Doc. 5. The Warden filed a Return of Writ, but Malvasi didn't file a Traverse. After the time-frame for him to do so had passed, I issued a Report recommending that the Court dismiss Malvasi's petition. Doc. 10.

---

[1] Shelbie Smith is the Warden at the Belmont Correctional Institution, so Smith is the proper named Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

Almost a month later, Malvasi filed a Motion for relief from judgment and included verification that he had timely submitted to the prison mailing system his Traverse, despite the Court never having received it. Doc. 12. He also included a copy of his Traverse. Doc. 12-2. The District Court granted Malvasi's motion and referred to me the matter "for a further Report and Recommendation addressing the arguments presented by Petitioner's Traverse." *Order*, 10/28/2024.

I have considered Malvasi's arguments presented in his Traverse, Doc. 12-2. But none of these arguments change the reasoning or the result of the initial Report and Recommendation. So for the additional reasons explained below, I recommend that the Court dismiss Malvasi's petition.

In my prior Report and Recommendation, I set out the background facts, procedural history, legal standard, and analysis as to Malvasi's three grounds for relief. Doc. 10. Here, I consider Malvasi's additional argument as to his three grounds for relief and explain why Malvasi's new arguments do not entitle him to relief.

*Ground one*: "The trial court []e[r]rs by permitting a witness (trooper Christopher Jester) to give an opinion testimony concerning the details of an automobile accident when the witness is not qualified to do so." Doc. 1, at 6. In my Report, I recommended that the Court find this claim not cognizable. Doc. 10, at 21–28.

In his Traverse, Malvasi asserts that "this claim was raised under an abuse of discretion argument, … which is a federal constitutional claim." Doc. 12-2, at 5. But Malvasi didn't raise this as an abuse-of-discretion claim—not in his petition, Doc. 1 at 6, not to the Ohio court of appeals, Doc. 8-1, at 249, and not to the Ohio Supreme Court, Doc. 8-1, at 336.

Malvasi may not present a new ground for relief in his traverse. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2000) (claims raised for the first time in a traverse are improper); *see Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 38 (6th Cir. 2019). Even if he had raised an abuse-of-discretion claim in his petition, his failure to present it to the state courts as a federal constitutional violation means that any such claim is procedurally defaulted. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)); *Brownlee v. Yost*, No. 1:19-cv-1993, 2021 WL 4482778, at *10 (N.D. Ohio July 13, 2021) (the petitioner failed to raise his "abuse of discretion" claim to the state courts as a federal constitutional violation, so he procedurally defaulted the claim), *report and recommendation adopted sub nom. Brownlee v. May*, 2021 WL 4478464 (N.D. Ohio Sept. 30, 2021). Malvasi doesn't allege cause to excuse this procedural default. And, as explained in the Report and Recommendation, Doc. 10 at 36, he doesn't show actual innocence to overcome a procedural default.

Furthermore, "abuse of discretion" is not a stand-alone federal habeas constitutional claim, even if Malvasi had raised it. *See Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995) (while an underlying constitutional claim may constitute federal habeas relief, whether the state court abused its discretion in denying the defendant relief on that underlying claim is not itself a federal constitutional violation).

As for the claim that Malvasi did raise—the trial court erred when it permitted expert testimony—he argues that "the testimony of Trooper Jester is the challenge to the admissibility and a challenge pursuant to the applicable standards set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) which impose an obligation upon a trial judge to 'ensure that any and all scientific testimony is not only relevant, but reliable.'[] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)." Doc. 12-2, at 5.

As the Report and Recommendation explains:

> In *Daubert*, the United States Supreme Court held that Federal Rule of Evidence 702 requires a trial judge to ensure that an expert's testimony is relevant and based on a reliable foundation. 509 U.S. at 597. But *Daubert* doesn't apply to state criminal proceedings, so ground one, which rests on Ohio law, is not cognizable. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) ("*Daubert* concerned the Federal Rules of Evidence which is not relevant to [the habeas petitioner's] conviction"); *Hale v. Shoop*, No. 1:18-cv-504, 2021 WL 1215793, at *39 (N.D. Ohio Mar. 31, 2021).

4

Doc. 10 at 21. *See also Kumho Tire Co.*, 526 U.S. 137 (evaluating Federal Rule of Evidence 702); *DeJonge v. Burton*, No. 1:16-cv-980, 2018 WL 4938722, at *22 (W.D. Mich. May 30, 2018) (*Daubert* and *Kumho Tire* "addressed the standard for admitting expert scientific testimony in trials conducted under the Federal Rules of Evidence," and "[t]he Supreme Court has never held that admitting evidence of questionable reliability against a criminal defendant without holding a *Daubert* hearing or similar procedure violates due process.") (quoting *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017), and other cases), *report and recommendation adopted*, No. 1:16-cv-980, 2018 WL 4929756 (W.D. Mich. Oct. 11, 2018).

Malvasi submits that the trial court's ruling "was so fundamentally unfair as to violate[] due process to a fair trial." Doc. 12-2, at 6. He submits that Jester was not qualified to testify as an expert. *Id*. at 8. But the Ohio court of appeals disagreed, observing that:

> {¶42} The expert's CV shows he engaged in low level accident reconstruction prior to 2004, at which time he trained in crash reconstruction and began serving as an accident reconstructionist. (St.Ex. 1). He completed over 300 reconstruction cases for local, state, and federal agencies between 2004 and 2017. He also served as a reconstruction training officer for new investigators and developed protocols for the reconstruction unit. His training courses were listed on the CV. At trial, he again reviewed his qualifications as an expert, noting he was a full-time crash and crime scene reconstructionist since 2012. (Tr. 734-740).

*Malvasi*, 203 N.E.3d at 834. The court remarked that "the expert's qualifications in accident reconstruction were established to a greater degree than those in a prior case where we found an officer was properly qualified to testify on accident reconstruction." *Id.* (citing cases). The court concluded:

> {¶44} Here, we have an Ohio State Highway Patrol trooper with a quarter century of accident investigation experience who was trained in reconstruction, worked in the crash and crime scene reconstruction unit since 2004, was a full-time crash and crime scene reconstructionist since 2012, completed reconstructions in over 300 cases, and was previously qualified as an expert in at least three counties. The trial court did not abuse its discretion in finding the state's expert was qualified to testify on accident reconstruction.

*Malvasi*, 203 N.E.3d at 834. Malvasi has not shown that the Ohio court of appeals' decision "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

Malvasi submits that, even if the expert was qualified, he relied on "a reconstruction method[] that has not been established to be reliable." Doc. 12-2, at 8. The Ohio court of appeals rejected this argument as follows:

> {¶46} An expert's testimony must be based on "reliable scientific, technical, or other specialized information." Evid.R. 702(C). If the testimony reports the result of a procedure, test, or experiment, then it is reliable only if: (1) the theory is objectively verifiable or validly derived from widely accepted knowledge, facts, or principles; (2) the design reliably implements the theory; and (3) it was conducted in a way that will yield an accurate result. Evid.R. 702(C)(1)-(3).

6

{¶47} In determining whether the opinion of an expert is reliable, the trial court examines whether the expert's conclusion is based on scientifically valid principles and methods, not whether the opinion is correct. *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611-613, 687 N.E.2d 735 (1998) (reversing the trial court's exclusion of an expert opinion), citing *Daubert*, 509 U.S. at 592-593, 595, 113 S.Ct. 2786. Factors to consider when evaluating the reliability of scientific evidence include whether the theory or technique has been tested and/or subjected to peer review, the potential rate of error, and whether the methodology is generally accepted. *Miller*, 80 Ohio St.3d at 611, 687 N.E.2d 735 (the inquiry is flexible), citing *Daubert*, 509 U.S. at 593-594, 113 S.Ct. 2786.

{¶48} The expert testified the speed calculation is a simple, long-standing concept taught in basic courses (and is even taught in courses that do not rise to the level of accident reconstruction). He explained the equation inputs (for the friction factor of the surface and the distance the vehicle traveled over the surface). (Hrg.Tr. 18). He additionally mentioned using a 3D laser scan and forensic mapping to record the condition of the vehicle and the scene; he also took photographs while he evaluated the vehicle at the scene. (Hrg.Tr. 9, 20-21). The expert explained his knowledge, gained from training and experience, that ejection from a vehicle likely leaves evidence at the edges of the opening, such as the fabric abrasion at the corner of the sunroof. He also explained how clothing imprint marks are left on a dashboard from an impact during a crash, noting this is a common occurrence on the inside and outside of vehicles when a person collides with a vehicle surface at high velocity. (Hrg.Tr. 23-25).

{¶49} The accident reconstruction expert said his methods, techniques, equations, and tools were generally accepted throughout the world in the field of accident reconstruction and investigation and

> were not unique. (Hrg.Tr. 31). Moreover, his report was subjected to peer review by a supervisor in order to lower the error rate and verify the conclusions such as the rolling of the vehicle. (Hrg.Tr. 30, 47, 49). At trial, he reiterated much of his experience and the process utilized. In addition, the evidence he relied on was viewable by the fact-finder in photographs and in maps he was trained to make (including the damage to and features of the outside and inside of the vehicle, the tire marks and gouges in the ground, the debris field, and the damage to the clothing and skin).
>
> {¶50} Merely because the expert could not say the accident "absolutely" occurred as he described or could not say a future accident would always happen in this same manner did not mean the reconstruction opinion was unreliable as to this particular accident considering all of the circumstances before the expert. Moreover, the consideration of reproducible results relates to the conclusion of an expert who employs a test or method for the facts at issue. The final interpretation of all existing data was not an experiment; nor was it a test in and of itself. We also note the expert voiced his conclusion to a reasonable degree of scientific certainty. A "reasonable certainty" is synonymous with "probability" not absolutes. *State v. Jackson*, 92 Ohio St.3d 436, 751 N.E.2d 946 (2001). In fact, "expert witnesses in criminal cases can testify in terms of possibility rather than in terms of a reasonable scientific certainty or probability." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 77 (applying the probability standard only to civil cases is constitutionally sound), citing *State v. D'Ambrosio*, 67 Ohio St.3d 185, 616 N.E.2d 909 (1993). Issues with the certainty of the scientific opinion are matters of sufficiency or weight of the evidence. *Id.*

*Malvasi*, 203 N.E.3d at 834–36. Other than disagreeing with the court's

conclusion, Malvasi hasn't said what about the decision he believes rose to the level of fundamental unfairness. *See Seymour*, 224 F.3d at 552.

Malvasi has not shown that he is entitled to relief on ground one.

*Ground two*: "The trial court erred and abused its discretion by permitting various witnesses to testify that the decedent stated that Appellant was the best drunk driver he knew." Doc. 1, at 6. In my Report, I recommended that the Court find this claim not cognizable and, alternatively, that it failed on the merits. Doc. 10, at 28–35.

In his Traverse, Malvasi reiterates his assertion that the trial court erred when it permitted witnesses to testify that "the decedent had stated that [Malvasi] was the best drunk driver that he knew." Doc. 12-2, at 9; *see* Doc. 1, at 6. He states that the testimony was "inadmissible hearsay." Doc. 12-2, at 9. Malvasi also asserts that even if it wasn't, "out-of-court statements might raise the specter of a violation of the Confrontation Clause." *Id*. But he doesn't address the cognizability issue or explain what about the Ohio court of appeals' decision he believes was unreasonable. *See also* Doc. 10, at 28–35 (Report and Recommendation explaining why this claim is not cognizable and, in the alternative, why it would fail on the merits).

Malvasi has not shown that he is entitled to relief on ground two.

*Ground three*: "The trial court errors and abuses its discretion by giving a flight instruction to the jury where the evidence reveals that the defendant left the scene of an accident to obtain medical assistance for another." Doc. 1,

at 7. In my Report, I recommended that the Court find that this claim is procedurally defaulted and not cognizable. Doc. 10, at 35–40. I explained that the claim is procedurally defaulted because Malvasi didn't present it to the state courts as a federal constitutional violation, and it is not cognizable because it challenges a state-law jury instruction. *See id.*

In his traverse, Malvasi doesn't allege cause or prejudice to excuse his procedural default. *See* Doc. 12-2, at 11–13. He argues that "no state remedies remain available to him" and concludes that he "has exhausted state remedies." Doc. 12-2, at 13. But that does not mean that Malvasi hasn't also procedurally defaulted his claim:

> If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. at 731-2, 111 S.Ct. 2546. This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. 1558. Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted. *Id*.

*Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

10

Malvasi alleges that "the flight instruction infected the entire trial that resulted in a due process right violation." Doc. 12-2, at 10. He asserts that "[t]he record is devoid of any indication that [he] left the scene in order to avoid apprehension and, in fact, the evidence actually reveals that police authori[ti]es knew the identity of Petitioner immediately upon commencing their investigation." Doc. 12-2, at 9–10. But as the Ohio court of appeals explained:

> {¶73} Here, Appellant did not merely depart from the scene of an accident involving a vehicle owned by his father. There was evidence he used the vehicle to drive to bars that night after he had an alcoholic drink and smoked marijuana; there was also evidence he drank at two bars and was intoxicated at the end of the night at the final bar. His friend was fatally injured in the accident, but he did not call 911 or seek assistance from the nearby houses. Instead, he walked or ran quite a distance to reach his house. According to video evidence, it took him ten minutes to walk to his house from the Route 46 intersection. This was in addition to the walk from the crash site to that recorded intersection, which seemed to be a similar distance. Then, when Appellant arrived home, he still did not call 911. Instead, he obtained another vehicle to drive back to the scene where he dragged the decedent's body into his vehicle and left the scene a second time. Appellant then went home again where the body stayed for 25 minutes in his car (until his father drove the car to an emergency care center).
>
> {¶74} Furthermore, the police arrived at Appellant's house mere minutes after his father left. When they knocked, Appellant was in the kitchen. Appellant looked at the officer through the window and walked away down a hallway instead of answering the door. He peeked around the corner at the officer minutes later, still refusing to answer the door despite ten

11

> minutes of knocking. The police subsequently learned of the fatality after the father reached the emergency center.
>
> {¶75} Collectively, the situation was more than mere departure from a scene; there was evidence of deliberate acts of evasion, concealment, and delay (potentially in order to provide time to come up with a story or to postpone alcohol testing). The reason behind Appellant's departure from the scene and related conduct thereafter was a jury question. It was not an abuse of discretion to conclude that Appellant's conduct could rationally be viewed as constituting flight or "analogous conduct" after crashing a vehicle while under the influence, warranting a consciousness of guilt instruction. *See Eaton*, 19 Ohio St.2d at 160, 249 N.E.2d 897.
>
> {¶76} Moreover, the jury was specifically instructed that if the defendant's conduct of leaving the scene was prompted by some motive other than consciousness of guilt, then they should not consider the conduct. In formulating the jury instructions, the court was not required to accept the theory from Appellant's opening statement that he was merely "stupid" by trying to "help" his friend in this manner (or his claim to a trooper that he was not the driver). The court did not abuse its discretion in providing the consciousness of guilt instruction on flight. The instruction would not have prejudiced the defense in any event under the totality of the evidence as reviewed in our Statement of the Case and throughout this Opinion; contrary to his argument, the other evidence showing he was the driver was not weak but was overwhelming. This assignment of error is overruled.

*Malvasi*, 203 N.E.3d at 840. Malvasi's claim that the factual record doesn't support the Ohio court of appeals' decision is belied by the record, which shows otherwise. *See* Doc. 8-2, at 724–27, 776–77, 872–86, 992–98. Malvasi also doesn't explain what about the Ohio court of appeals' decision he believes was

"contrary to or an unreasonable application of clearly established Supreme Court precedent." *See* 28 U.S.C. § 2254(d)(1).

Malvasi hasn't shown that he is entitled to relief on ground three.

*Evidentiary hearing.* In his Traverse, Malvasi requests an evidentiary hearing. Doc. 12-2, at 13.

Under 28 U.S.C. § 2254(e)(2):

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Malvasi has not identified what portion of 28 U.S.C. § 2254(e)(2) he believes entitles him to a hearing and no section appears to apply to his case. So I deny Malvasi's request for an evidentiary hearing.

*Conclusion*

For the additional reasons explained above, I recommend that the Court dismiss Malvasi's Petition. I deny Malvasi's request for an evidentiary hearing.

Dated: November 8, 2024

                                         */s/ James E. Grimes Jr.*
                                         James E. Grimes Jr.
                                         U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).